990 So.2d 763 (2008)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Pat CARR.
No. 2008-JP-00908-SCT.
Supreme Court of Mississippi.
September 18, 2008.
*764 Luther T. Brantley, III, Darlene D. Ballard, attorneys for appellant.
Jason D. Herring, Tupelo, attorney for appellee.
EN BANC.
CARLSON, Justice, for the Court.
¶ 1. The Mississippi Commission on Judicial Performance filed a formal complaint charging Lee County First District Justice Court Judge Pat Carr, who also serves as municipal court judge for the cities of Guntown and Saltillo, with willful misconduct in office and conduct prejudicial to the administration of justice which brings the office into disrepute, thus causing such conduct to be actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890, as amended. The Commission and Judge Carr filed a Joint Motion for Recommendation, and the Commission recommends that Judge Carr be publicly reprimanded, suspended from the office of justice court judge, District One, Lee County, and municipal court judge for the cities of Gunman and Saltillo, for a period of sixty days without pay, fined $2,000, and assessed costs in the sum of $100. The Commission's recommendation is now before this Court pursuant to Mississippi Commission on Judicial Performance Rule 10.

FACTS AND PROCEEDINGS BEFORE THE COMMISSION
¶ 2. On December 5, 2007, the Commission filed a Formal Complaint against Judge Carr charging him with willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of the Code of Judicial Conduct, thus causing such conduct to be actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890. Specifically, the Commission's Formal Complaint against Judge Carr charged him with violating Canons 1, 2A, 2B, 3B(2), 3B(4), and 3B(7) of the Mississippi Code of Judicial Conduct. On January 7, 2008, Judge Carr filed his Answer to the Formal Complaint.
¶ 3. On April 3, 2008, counsel for the Commission and Judge Carr filed an Agreed Statement of Facts and Proposed Recommendation which was submitted in *765 lieu of a commission hearing as provided for in Mississippi Commission on Judicial Performance Rule 8. On May 9, 2008, the Agreed Statement of Facts and Proposed Recommendation was accepted by the full Commission by a vote of 7-0. The following facts were agreed to by the Commission and Judge Carr:
The complainants [Sharee Venda Sanders and Rebecca Bounds Lyons] have family members buried in a private cemetery near Saltillo, Lee County, MS. Part of the family plot is enclosed with an iron fence, pieces of which have been stolen over the years. Ms. Sanders, one of the complainants above, removed the remaining two sections of the fence on or about May 4, 2007 for safekeeping. Thereafter, on May 21, 2007 [Judge Carr], along with two Lee County deputy sheriffs, went to the Sanders home and the deputies inquired of Ms. Sanders about the removed fence portions. Though no criminal or civil charges were pending against Ms. Sanders, [Judge Carr] called the next day and ordered Ms. Sanders to return the fence pieces to the cemetery no later than June 1, 2007 or face prosecution.
Ms. Sanders called [Judge Carr] on or about May 23, 2007 to ask for additional time to return the fence and [Judge Carr] told her she would be prosecuted if she failed to return the fence by June 1, 2007.
On May 29, 2007, Ms. Sanders spoke with [Judge Carr] and asked for additional time to return the fence due to a family medical emergency. Seven (7) additional days were granted. However, on June 6, 2007, [Judge Carr] called Ms. Sanders and informed her that a warrant had been issued for her arrest, though no warrant was ever found. On June 7, 2007, Ms. Sanders returned the fence portions to the cemetery, though no charges were ever pending against her regarding the incident.
By engaging in the above stated conduct, [Judge Carr] violated Canons 1, 2A, 2B, 3B(2), and 3B(7) of the Code of Judicial Conduct of Mississippi.
. . . .
[S]aid conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
¶ 4. Based on these agreed facts, counsel for the Commission and Judge Carr proposed that Judge Carr be publicly reprimanded, suspended from the offices of justice court judge, District One, Lee County, and municipal court judge for the cities of Guntown and Saltillo for a period of sixty days without pay, and assessed a fine of $2,000 plus costs of $100.
¶ 5. After the full Commission unanimously adopted the Agreed Statement of Facts and Proposed Recommendation, the Commission, on May 27, 2008, filed with this Court its Findings of Fact and Recommendation. On June 23, 2008, the Commission and Judge Carr filed a Joint Motion for Approval of Recommendations Filed by the Mississippi Commission on Judicial Performance and Memorandum Brief in Support of Joint Motion for Approval of Recommendations Filed by the Mississippi Commission on Judicial Performance.

DISCUSSION
¶ 6. This Court reviews the recommendations of the Mississippi Commission on Judicial Performance de novo. Miss. Comm'n on Judicial Performance v. Sutton, 985 So.2d 322, 326 (Miss.2008) quoting Miss. Comm'n on Judicial Performance v. Osborne, 977 So.2d 314, 320 (Miss.2008) (citing Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993)). "While it is true that *766 this Court is the trier of fact in judicial misconduct proceedings and may impose additional sanctions, it nonetheless gives great weight to the findings of the Commission which has had the opportunity to observe the demeanor of the witness." Id. (quoting In re Garner, 466 So.2d 884, 885 (Miss.1985)). However, because we "have the sole power to impose sanctions in judicial misconduct cases," we are obligated to render an independent judgment on the charges. Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300, 303 (Miss.2007) quoting Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004) (citing Miss. Comm'n on Judicial Performance v. Peyton, 645 So.2d 954, 956 (Miss.1994)).

I. WHETHER JUDGE CARR'S CONDUCT CONSTITUTES WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE.
¶ 7. The Commission found by clear and convincing evidence that Judge Carr had violated Canons 1, 2A, 2B, 3B(2), and 3B(7) of the Code of Judicial Conduct of Mississippi.[1]
¶ 8. The Commission further found by clear and convincing evidence that Judge Carr's conduct constituted "willful misconduct in office" and "conduct prejudicial to the administration of justice which brings the judicial office into disrepute[.]" Miss. Const., art. 6 § 177A(b), (e).
¶ 9. This Court has explained that:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority[,] constitutes bad faith.
. . . .
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
In Re Quick, 553 So.2d 522, 524-25 (Miss. 1989) citing In Re Anderson, 412 So.2d 743, 745 (Miss.1982) (quoting In Re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977)) (emphasis in original); see also In re Garner, 466 So.2d 884, 885 (Miss.1985); In Re Stewart, 490 So.2d 882, 884 (Miss. 1986); In Re Collins, 524 So.2d 553 (Miss. 1987).
¶ 10. Judge Carr engaged in ex parte communications with members of the community regarding Sanders's removal of *767 fence pieces from a private cemetery. Based on these ex parte communications, Judge Carr, along with two Lee County sheriff's deputies, went to Sanders's home and engaged in threatening conversations with Sanders about the missing fence pieces. Although there were no criminal or civil charges against Sanders, Judge Carr used the power and influence of his office as a judge and ordered Sanders to return the fence pieces to the cemetery. We agree with the Commission that Judge Carr's conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
¶ 11. Furthermore, Judge Carr admits his conduct violated canons of the Mississippi Code of Judicial Conduct, particularly: Canon 1 (charging judges to uphold the integrity and independence of the judiciary); Canons 2A and 2B (charging judges to avoid impropriety and the appearance of impropriety, in all activities, including respecting and complying with the law and not allowing personal relationships to influence their conduct or judgment); and Canons 3B(2) and 3B(7) (charging judges to impartially and diligently perform their judicial duties by, inter alia, being faithful to the law and avoiding being swayed by partisan interests as well as avoiding ex parte communications).
¶ 12. Judge Carr has agreed to the Commission's recommendation and has joined the Commission's motion for approval of its recommendations; therefore, Judge Carr acknowledges that he violated several canons of the Mississippi Code of Judicial Conduct and that his actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. We thus turn to the appropriate sanctions to impose upon Judge Carr.

II. WHETHER JUDGE CARR SHOULD BE PUBLICLY REPRIMANDED, SUSPENDED FROM THE OFFICE OF JUSTICE COURT JUDGE AND MUNICIPAL COURT JUDGE FOR A PERIOD OF SIXTY DAYS WITHOUT PAY, FINED $2,000, AND ASSESSED COSTS IN THE AMOUNT OF $100.
¶ 13. Pursuant to Article 6, Section 177A of the Mississippi Constitution, and Mississippi Commission on Judicial Performance Rule 10, the Commission is charged with recommending disciplinary sanctions, and this Court, based upon a review of the entire record, is charged with determining the appropriate sanction. Furthermore, this Court has the sole power to impose sanctions. Quick, 553 So.2d at 527.
¶ 14. The sanctions available to this Court when disciplining a judge include: (1) removal from office; (2) suspension from office; (3) fine; and (4) public censure or reprimand. Osborne, 977 So.2d at 324. Cf. Miss. Comm'n on Judicial Performance v. Teel, 863 So.2d 973, 975 (Miss.2004) (citing Miss. Const., art. 6, § 177A); Mississippi Judicial Performance Comm'n v. Walker, 565 So.2d 1117, 1128-32 (Miss.1990) (compiling list of judicial performance sanctions in Mississippi). In order to reach an appropriate sanction, the "sanction should recognize the misconduct, deter and discourage similar behavior, preserve the dignity and reputation of the judiciary, and protect the public." Id. (quoting Miss. Comm'n on Judicial Performance v. Sanders, 708 So.2d 866, 877 (Miss.1998)).
¶ 15. Additionally, in determining the appropriate sanction, this Court must consider six factors as revised in Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss. *768 2004). We now apply these factors to the record before us in today's case.

(1) Length and character of the judge's public service.
¶ 16. Judge Carr has been a justice court judge since 1991; however, the record is otherwise devoid of evidence relating to Judge Carr's public service.

(2) Whether there is any prior case law on point.
¶ 17. This Court previously has considered the appropriate discipline where a judge had improperly used the power of his office to advance the private interests of others.
¶ 18. In Mississippi Commission on Judicial Performance v. Brown, 918 So.2d 1247 (Miss.2005), Judge Brown attempted to use his position as a justice court judge to obtain favorable treatment for his son. Judge Brown's son was arrested for domestic violence against his wife, and Judge Brown had interfered with the prosecution of the case against his son by ordering him released from jail and arranging to have his case remanded to the file. Additionally, after his son's wife filed a complaint with the Commission accusing Judge Brown of judicial misconduct, Judge Brown had threatened his son's wife by telling her that if he lost his job, she would also lose her job. Because of the egregiousness of Judge Brown's conduct, and because this was not Judge Brown's first judicial misconduct proceeding, this Court removed him from the office of justice court judge and assessed him with the costs of the proceeding in the amount of $1,336.79.
¶ 19. In Mississippi Commission on Judicial Performance v. Cole, 932 So.2d 9 (Miss.2006), Judge Cole had approached the Tate County Sheriff in an attempt to gain favorable treatment in the penal system for his grandson. Since this was an isolated event and Judge Cole had no prior record before the Commission, this Court ordered that Judge Cole be publicly reprimanded.
¶ 20. The case of Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209 (Miss.2006), involved Judge Sanford approaching the county sheriff and asking that an arresting officer in a DUI case be late for court so that Judge Sanford could dismiss the citation for lack of prosecution. This Court found Judge Sanford's misconduct to be "quite serious;" thus, even though Judge Sanford had no prior disciplinary record, we ordered a public reprimand and thirty-day suspension without pay, plus assessment of costs.
¶ 21. In Mississippi Commission on Judicial Performance v. Gordon, 955 So.2d 300 (Miss.2007), Judge Gordon had involved himself in ticket-fixing by "passing" fourteen traffic tickets to the file over the objections of the issuing officer. This Court determined that Judge Gordon's actions constituted egregious conduct and issued a public reprimand and a thirty-day suspension from office and assessed Judge Gordon $100 in court costs. Judge Gordon had one prior, unrelated, informal commission action in 1994, but this Court stated that Judge Gordon did not display a pattern of conduct.

(3) The magnitude of the offense and the harm suffered.
¶ 22. Judge Carr's violation of Canons 1, 2A, 2B, 3B(2), and 3B(7) of the Code of Judicial Conduct is significant. The nature of the conduct was a gross abuse of Judge Carr's power to act in his official capacity as justice court judge. Judge Carr's actions in engaging in ex parte communications with members of his community regarding a private matter and then using the power of his office to accomplish *769 the return of the fence pieces gave the perception that he was lending the prestige of his office to advance the private interests of others.

(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 23. The record reveals other incidents that demonstrate this type of behavior involving a pattern of judicial misconduct by Judge Carr. In 1995, the Commission issued a private admonishment to Judge Carr for interfering in a dispute involving a business he owned and invoking the prestige of his office for personal gain. In 2001, the Court directed that Judge Carr be publicly reprimanded and pay costs of $100 for allowing an arraignment of murder suspects to be photographed and broadcasted by the media.[2]Miss. Comm'n on Judicial Performance v. Carr, 786 So.2d 1055 (Miss.2001). Thereafter, in 2003, this Court issued its order in an unpublished case in which a public reprimand, a fine of $500, and costs were imposed against Judge Carr. In that particular case, Judge Carr, in presiding over a domestic-violence matter, refused to allow the prosecution or defense to present evidence and maintained that he would take the case under advisement. However, later that day, Judge Carr dismissed the charges without allowing the victim to testify or present witnesses or other evidence. Miss. Comm'n on Judicial Performance v. Carr, 2003 Miss. LEXIS 635 (Miss. April 3, 2003).

(5) Whether moral turpitude was involved.
¶ 24. In the Memorandum Brief in Support of Joint Motion for Approval of Recommendations Filed by the Mississippi Commission on Judicial Performance, which was jointly submitted by the Commission and Judge Carr through counsel, we find this language addressing the issue of moral turpitude: "There is no evidence which would suggest that moral turpitude was involved in [Judge Carr's] actions, though [Judge Carr's] actions are troubling." We unquestionably agree that Judge Carr's actions, coupled with his prior judicial misconduct, are troubling, but we disagree with the statement that moral turpitude was not involved.
¶ 25. In Gibson, this court held that "moral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Gibson, 883 So.2d at 1158. n. 2. Since Gibson, this Court has found the existence of moral turpitude in several recent cases. Gordon, 955 So.2d at 305-06 (fourteen instances of "ticket-fixing"); Sanford, 941 So.2d at 216-18 (at request of judge, sheriff informed arresting officer in DUI case not to appear at a court hearing so that judge could dismiss case for failure to prosecute, and the case was dismissed); Miss. Comm'n on Judicial Performance v. Britton, 936 So.2d 898, 906 (Miss.2006) (six complaints ranging from ex parte communications with parties to setting aside judgment entered by another judge); Miss. Comm'n on Judicial Performance v. Cowart, 936 So.2d 343, 350 (Miss.2006) (three instances involving ex parte communications, resulting in judge remanding traffic tickets to files).
*770 ¶ 26. We find Judge Carr's actions to be similar in egregiousness to the actions of the judges in Gordon, Sanford, Britton, and Cowart. We also find that moral turpitude was involved. Not only did Judge Carr have ex parte communications with members of his community, he acted on those ex parte communications by threatening Sanders with prosecution if she failed to return the cemetery fence pieces. Also, Judge Carr, acting in his official capacity as a justice court judge, told Sanders that a warrant had been issued for her arrest, although it is admitted that "no [arrest] warrant was ever found." We can thus deduce from the record that Judge Carr's statements to Sanders about an outstanding arrest warrant were false. In the end, Sanders returned the missing cemetery fence pieces without any formal proceedings being commenced in justice court. Therefore, contrary to the statements of the Commission and Judge Carr, this Court finds that Judge Carr's actions do reveal the existence of moral turpitude.

(6) The presence or absence of mitigating or aggravating circumstances.
¶ 27. Aggravating circumstances are present in today's case. Judge Carr has previously been disciplined by this Court on three occasions. Likewise, Judge Carr's actions reflect adversely on the integrity of the judiciary. In a recent case involving another Lee County justice court judge, we stated: "[T]he citizens of Lee County unquestionably have a right to expect and demand that their elected justice court judges will refrain from such judicial misconduct." Miss. Comm'n on Judicial Performance v. Thompson, 972 So.2d 582, 589 (Miss.2008). This statement certainly applies likewise to Lee County First District Justice Court Judge Pat Carr, as it did to Lee County Fourth District Justice Court Judge Rickey W. Thompson.
¶ 28. On the other hand, mitigating circumstances also are present in light of the fact that Judge Carr, like Judge Thompson, agreed his actions were improper and entered into a joint Agreed Statement of Facts and Proposed Recommendation. In Thompson, we stated that "Judge Thompson stepped up and accepted responsibility for his conduct and is willing to be held accountable for his actions. Such action on the part of Judge Thompson is commendable and is considered by this Court to be mitigating in nature." Id. at 589. These statements likewise apply to Judge Carr. However, unlike Judge Thompson, who had only one prior reported incident of judicial misconduct (Id. at 588), Judge Carr has three prior reported incidents of judicial misconduct. Today's case is hardly Judge Carr's maiden voyage to the steps of the Commission building, and thus, these mitigating circumstances do not carry as much weight as they did in Thompson.

CONCLUSION
¶ 29. Judge Carr's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brought the judicial office into disrepute. We thus order Judge Carr to be publicly reprimanded; to be suspended from the offices of justice court judge, District One, Lee County, and municipal court judge for the cities of Guntown and Saltillo for a period of sixty (60) days, without pay; and to be assessed a fine of $2,000, plus costs of $100. The public reprimand shall be read in open court on the first day of the next term of the Circuit Court of Lee County in which a jury venire is present, with Judge Carr present and standing before the presiding judge, who shall read the reprimand in open court.
*771 ¶ 30. LEE COUNTY JUSTICE COURT JUDGE PAT CARR SHALL BE PUBLICLY REPRIMANDED; SUSPENDED FROM THE OFFICES OF JUSTICE COURT JUDGE, DISTRICT ONE, LEE COUNTY, AND MUNICIPAL JUDGE FOR THE CITIES OF GUNTOWN AND SALTILLO FOR A PERIOD OF SIXTY (60) DAYS WITHOUT PAY; AND ASSESSED A FINE OF $2,000 PLUS COSTS OF $100. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE LEE COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VENIRE IS PRESENT AFTER THIS DECISION BECOMES FINAL.
SMITH, C.J., WALLER, P.J., DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, P.J., AND EASLEY, J., NOT PARTICIPATING.
NOTES
[1] We note that the Commission made no finding as to whether Judge Carr had violated Canon 3B(4), as charged in the initial Formal Complaint filed before the Commission. Canon 3B(4) of the Mississippi Code of Judicial Conduct states that "[j]udges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities, and shall require similar conduct of lawyers, and of their staffs, court officials, and others subject to their direction and control."
[2] Effective April 17, 2003, we adopted the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings (MREPC) which apply to the Supreme Court, Court of Appeals, chancery courts, circuit courts, and county courts; however, the MREPC do not apply to justice courts or municipal courts. See also Miss. Comm'n on Judicial Performance v. Blakeney, 905 So.2d 521, 523-24 n. 3 (Miss.2004).