PIERCE, Justice,
for the Court:
¶ 1. The Mississippi Commission on Judicial Performance recommends that Bruce B. Smith, municipal court judge for Mendenhall, Mississippi, be publicly reprimanded, suspended from office for thirty days without pay, and taxed with costs in the amount of $1,151.60 for: (1) failing to properly adjudicate criminal matters assigned to him, (2) engaging in ticket-fixing, and (3) dismissing criminal charges against multiple defendants in exchange for simultaneous payments to a “drug fund” established and maintained by the Mendenhall police chief. The Commission found that Judge Smith’s conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute under Section 177A of the Mississippi Constitution of 1890. Specifically, the Commission found by clear and convincing evidence that Judge Smith violated Canons 1, 2A, 3B(1), 3B(2), and 3B(8) of the Code of Judicial Conduct. We concur with the Commission’s findings and adopt its proposed sanctions.
FACTS
¶ 2. In December 2010, the Mississippi Commission on Judicial Performance filed a formal complaint against Judge Smith charging judicial misconduct actionable pursuant to the provisions of Section 177A of the Mississippi Constitution of 1890, as amended. Judge Smith filed an answer denying the charges.
¶ 3. The Committee of the Commission on Judicial Performance held a hearing on the allegations on March 16, 2012. On July 26, 2012, the Committee filed its Findings of Fact and Conclusions of Law. Judge Smith filed an objection to these findings. At its regularly scheduled meeting on August 10, 2012, the full Commission accepted and adopted the Committee’s Findings of Fact and Conclusions of Law and overruled Judge Smith’s motion to dismiss. On August 21, 2012, the Commission entered its Findings of Fact, Conclusions of Law and Recommendation.
¶ 4. According to the Commission’s findings, from December 2009 through July 2010, until his resignation in October 2010, Bruce Barlow, police chief of the City of Mendenhall instituted a program whereby defendants charged with violations of Mississippi’s Implied Consent Law, as well as felonies and various misdemeanor offenses, could avoid prosecution on those charges in exchange for a payment to a “drug fund” maintained by the City of Menden-hall. Judge Smith, with full knowledge of the program, presided over thirty-eight cases during that time period in which such charges were ordered dismissed and/or remanded to file upon the recommendation of the police chief, with simultaneous payments made by the defendants into the drug fund. It is undisputed that Judge Smith knew of the program’s existence. In his opening statement at the hearing, he explicitly stated that he knew these negotiations involving payments into the drug fund were taking place. “I’d be on the bench doing guilty pleas. They’d be in the back negotiating these things out. So they’d come back out, and they’d make this recommendation to me.” As a result, each defendant received assurance that a conviction on the pending charges and its subsequent consequences would never appear on the defendant’s driving record or criminal history.
¶ 5. A summary of the pertinent cases disposed of by Judge Smith was introduced at the hearing. The exhibit shows that, in thirty-six of the thirty-eight cases, each defendant pleaded guilty to a lesser charge and paid a fine and state assess *97 ment of costs; this was in addition to the payment the defendant made into the drug fund to have his or her greater charge(s) dismissed and/or remanded to file.[1] In the other two cases, Judge Smith dismissed all the charges presented. The amount paid into the drug fund in each case ranged from $250 to $8,000.
¶ 6. According to the Commission, other defendants similarly charged during this time period who had appeared before Judge Smith were found guilty and paid fines and assessments. Chief Barlow did not offer these defendants the opportunity to pay money into the drug fund to get their charges dismissed.
¶ 7. William Smith, the city prosecutor, also with full knowledge of the program, acquiesced in the disposition of the pertinent cases. Smith testified at the hearing that he was not involved in the negotiations for the disposition of the charges, and he acknowledged that he did not attempt to ascertain the viability of the cases for prosecution.
¶ 8. Lori King, the municipal court clerk for Mendenhall, whose office is responsible for “administering the collection of all fines, penalties, fees and costs imposed by the court and depositing all collections with the municipal treasurer or equivalent officer[,]” [2] testified that her office received only the fine and assessment money paid in each particular case. The drug-fund payments were handled by the Mendenhall police department. According to King, she found the matter “very unsettling” because she knew of no other court engaging in such practice.
¶ 9. Officer Kris Grantham, the arresting officer in a majority of these cases, testified that he was aware of the drug fund and that many of the charges he had written were being dismissed upon a defendant’s payment into it. Officer Grant-ham learned of the practice from Chief Barlow, and Officer Grantham complained about it to other police officers. According to Officer Grantham, when Chief Barlow found out about his complaints, Chief Barlow told him to either “quit or be fired.” Officer Grantham thereafter left the Men-denhall police force. He returned approximately five months later when a new police chief was hired.
¶ 10. The disposal of cases in this manner continued until the Federal Bureau of Investigation began an investigation into the alleged mishandling of the “drug-fund” money by Chief Barlow, at which time Judge Smith and the prosecutor ceased the practice.
¶ 11. Judge Smith has served as a municipal court judge for twenty years, and this is the first formal complaint filed against him. There are no allegations that Judge Smith in any way profited financially from the actions of which he is charged.
1112. Judge Smith argues the following:
I. The Commission erred in denying his motion to dismiss for lack of jurisdiction.
II. The Commission erred in not dismissing the amended complaint pursuant to this Court’s recent rulings in Mississippi Commission on Judicial Performance v. Little and Mississippi Commission on Judicial Performance v. McGee.
III. The Commission erred in not recommending a private admonishment pursuant to the Gibson factors.
*98 ¶ 13. Additional facts, as necessary, will be related in our discussion.
DISCUSSION
¶ 14. This Court is vested with the sole power to impose sanctions in judicial misconduct cases and, thus, must undertake an independent inquiry of the case record. In re Anderson, 412 So.2d 743, 746 (Miss.1982). In so doing, this Court accords “careful consideration [to] the findings of fact and recommendations of the Commission, or its committee, which has had the opportunity to observe the demeanor of the witnesses.” Id. This Court may “accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission.” Miss. Comm’n on Judicial Performance R.10(E).
I. The Commission erred in denying his motion to dismiss for lack of jurisdiction.
II. The Commission erred in not dismissing the amended complaint pursuant to this Court’s recent rulings in Mississippi Commission on Judicial Performance v. Little and Mississippi Commission on Judicial Performance v. McGee.
¶ 15. We address issues one and two together. Judge Smith argues that, pursuant to Rule 2 of the Rules of the Mississippi Commission on Judicial Performance, the Commission did not have jurisdiction to hear the complaint against him. Rule 2 states, in part, that, “In the absence of fraud, corrupt motive, or bad faith, the Commission shall not consider allegations against a judge for making findings of fact, reaching a legal conclusion, or applying the law as he understands it.” Judge Smith contends that the complaint against him made no allegations of fraud, corrupt motive, or bad faith and that, after a thorough investigation and full hearing of this matter, there has been no finding that he committed any fraud or acted with corrupt motive or bad faith. Judge Smith maintains that the established facts show he merely sustained the motion made by the prosecutor in all the subject cases, and even if he erred in doing so, such error does not constitute fraud, corrupt motive, or bad faith.
¶ 16. Also, Judge Smith contends that this case is nearly identical to this Court’s recent decisions in Mississippi Commission on Judicial Performance v. Little, 72 So.3d 501 (Miss.2011), and Mississippi Commission on Judicial Performance v. McGee, 71 So.3d 578 (Miss.2011). In those two cases, justice court judges were charged with judicial misconduct for remanding, nonadjudicating, or retiring to the files several DUI charges at the request of county prosecutors. Little, 72 So.3d at 502; McGee, 71 So.3d at 584-85. This Court dismissed those counts with prejudice, holding that, even if the judges had improperly disposed of the DUI charges, their decisions were only a mistake of law and not sanctionable. Little, 72 So.3d at 504; McGee, 71 So.3d at 584-85.
¶ 17. Judge Smith’s contention that the Commission was without jurisdiction in this matter is meritless. As this Court has held, “a judge may ... through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.” Miss. Comm’n on Judicial Performance v. Russell, 691 So.2d 929, 937 (Miss.1997) (quoting Miss. Comm’n on Judicial Performance v. Milling, 651 So.2d 531, 538 (Miss.1995)). “The misconduct complained of need not be intentional or notorious; rather negligence, ignorance, and incompetence suffice as grounds for behavior to *99 be classified as prejudicial to the administration of justice which brings the judicial office into disrepute and thus worthy of sanctions.” Mississippi Comm’n on Judicial Performance v. Carr, 786 So.2d 1055, 1059 (Miss.2001) (citing In re Quick, 553 So.2d 522, 527 (Miss.1989)). This Court can recognize generally an example of willful misconduct presented for review, without a detailed discussion of each Canon violated. Mississippi Comm’n on Judicial Performance v. Guest, 717 So.2d 325, 328 (Miss.1998) (citing In re Anderson, 412 So.2d 743, 752 (Miss.1982) (Hawkins, J. specially concurring)).
¶ 18. Judge Smith’s actions clearly constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution of 1890. And we adopt the Commission’s findings that Judge Smith’s conduct violated Canons 1 (requiring judges to uphold the integrity and independence of the judiciary), 2A (requiring judges to avoid impropriety and the appearance of impropriety, in all activities, including respecting and complying with the law), 3B(1), 3B(2), and 3B(8) (requiring judges impartially and diligently to perform their judicial duties by, inter alia, being faithful to the law and disposing of all judicial matters assigned, efficiently and fairly).
¶ 19. Testimony was presented at Judge Smith’s hearing that DUI charges adjudicated in the City of Mendenhall Municipal Court were, for reasons undisclosed by the record before us, consistently being overturned by the Simpson County Circuit Court — thereby depriving the city of monies from the fines associated with such charge(s). Judge Smith and the prosecutor apparently saw a fix to this perceived problem with the so-called drug fund instituted by Chief Barlow. Judge Smith admitted that his decision to accept the lesser pleas contingent on payments into the drug fund was at least partially motivated by his desire to collect fees for the City of Mendenhall. “I could have said, no, we’re not going to do this, call your witness, and then dismiss them and the City of Men-denhall get nothing.” Judge Smith also apparently felt justified that the drug fund plea deals were good because it created a situation where “everybody [was] happy” and “[njobody [was] complaining.” Ultimately, it appears his decision to go along with the recommendations was practical, rather than legal. “This was a ... practical matter of getting rid of cases, getting some money for the City of Mendenhall, getting some punishment to the guys that did this, and, you know, the case is over.”
¶ 20. The powers and duties of a municipal-court judge are prescribed by Mississippi Code Section 21-23-7. It states, in part, that a “municipal judge shall have the jurisdiction to hear and determine ... all cases charging violations of the municipal ordinances and state misdemeanor laws made offenses against the municipality and to punish offenders therefor as may be prescribed by law.” Miss.Code Ann. § 21-23-7(1) (Supp.2012). Here, Judge Smith dismissed numerous charges brought before his court for adjudication in exchange for payments made into an unauthorized drug fund. Such payments, ranging — as mentioned — from $250 to $3,000, essentially constituted fines, i.e., pecuniary punishment.
¶ 21. The law plainly states that “[a] person charged with an offense shall not be punished therefor unless legally convicted thereof.” Miss.Code Ann. § 99-19-3 (Rev.2007). Section 21-23-7(11) of the Mississippi Code, however, does allow the municipal court to impose reasonable court costs when “any affidavit, complaint, or charge is dismissed,” but which shall not *100 exceed $50. Miss.Code Ann. § 21-23-7(11) (Supp.2012).
¶22. Unlike what we found in Little and McGee, Judge Smith’s decision to dispose of the charges in this manner constituted not a mistake of the law, but a clear disregard of it, and is sanctionable.
III. Sanctions
¶ 28. Article 6, Section 177A of the Mississippi Constitution of 1890, as amended, provides that a judge may be removed, suspended, fined, publicly censured, or publicly reprimanded by the Supreme Court. The Commission recommends sanctions of a public reprimand, suspension from office for a thirty-day period without pay, and costs in the amount of $1,151.60. Judge Smith argues that he should be sanctioned with a private reprimand.
¶ 24. In determining the appropriate sanctions for a judicial misconduct, the following six Gibson criteria are considered:
(1)The length and character of the judge’s public service; (2) Whether there is any prior case law on point; (3) The magnitude of the offense and the harm suffered; (4) “Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances.
Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004), overruled in part on other grounds by Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 174 (Miss.2011).

(I) The length and character of the judge’s public service

¶ 25. Judge Smith has been a municipal-court judge for eighteen years. The record is silent as to the character of his public service.

(2) Whether there is any prior case-law on point.

¶ 26. We found no previous decision by this Court that addresses the type of misconduct at issue here. However, the case of Mississippi Commission on Judicial Performance v. Sheffield, 883 So.2d 546 (Miss.2004), bears mentioning. There, a justice-court judge, upset with Lee County over the lack of funding for a court bailiff, decided he would “teach the county a lesson” by suspending fines and state assessments in a number of cases-thereby depriving the county of money from fines and state assessments. Id. at 547. This Court found such conduct constituted a gross abuse of power and agreed with the Commission’s proposed sanctions of a public reprimand, a $192 fine, and $100 in court costs.
¶ 27. Here, Judge Smith’s actions were not based on spite, but rather were motivated on what he and the prosecutor believed was a “good idea.” Judge Smith’s good intentions notwithstanding, his judicial conduct similarly constituted a gross abuse of power.

(3) The magnitude of the offense and the harm suffered

¶ 28. Canon 1 was violated when Judge Smith engaged in a pattern of improperly adjudicating criminal matters assigned to him and failing to assess statutory fines and costs in criminal matters. Thus, his actions compromised the integrity and independence of the judiciary and his duties as a judicial officer. Judge Smith violated Canons 2A, 3B(1), and 3B(2) when he dismissed charges against criminal defendants in exchange for simultaneous payments to an authorized drug fund. Judge Smith violated Canon 3B(8) by ordering *101 payments to be made by a criminal defendant at a time when the criminal charges were dismissed.

(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.

¶ 29. Judge Smith does not have a disciplinary history with the Commission. Nevertheless, this Court “has found that a pattern of misconduct exists where a single disciplinary action comprises multiple offenses.” Miss. Comm’n on Judicial Performance v. McKenzie, 63 So.3d 1219, 1225 (Miss.2011) (citation omitted). In this instance, Judge Smith disposed of multiple charges in thirty-eight cases by dismissing or remanding the same in exchange for a payment of money to an unauthorized drug fund.

(5) Whether moral turpitude was involved.

¶ 30. We find no moral turpitude involved in this case.

(6) The presence or absence of mitigating or aggravating factors

¶ 31. In mitigation, there is no indication that Judge Smith profited in any manner from the payments into the drug fund. Judge Smith has not been the subject of any other complaints during his eighteen years on the bench, and the conduct complained of herein has ceased. And, although Judge Smith challenged the charges against him, the Commission noted for the record that Judge Smith cooperated fully with the Commission throughout the matter.
CONCLUSION
¶ 32. In conclusion, we find the actions of Bruce B. Smith, Municipal Court Judge, Mendenhall, Mississippi, constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. Accordingly, after considering the Gibson factors, we adopt the recommendation of the Commission. Judge Smith shall be publicly reprimanded, suspended from office for thirty days without pay, and taxed with costs in the amount of $1,151.60. The Clerk of this Court shall send copies of this opinion together with the mandate of this Court to the Municipal Clerk of the City of Men-denhall and the Circuit Clerk of Simpson County.
¶ 33. MUNICIPAL COURT JUDGE BRUCE B. SMITH SHALL BE SUSPENDED FROM OFFICE FOR A PERIOD OF THIRTY DAYS WITHOUT PAY, EFFECTIVE ON THE DATE OF THE ISSUANCE OF THIS COURT’S MANDATE; PUBLICLY REPRIMANDED; AND ASSESSED COSTS OF $1,151.60. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT ON THE FIRST DAY OF THE NEXT TERM OF THE SIMPSON COUNTY CIRCUIT COURT IN WHICH A JURY VENIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE SMITH IN ATTENDANCE.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ„ CONCUR.

. Charges were remanded to file in four of the thirty-eight cases.

. See Miss. Code Ann. § 21-23-11 (Rev.2007).